IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDSAY SCHILL<br>1341 Fox Run Drive, Apt. No. 105<br>Willoughby, Ohio 44094,<br><br>-and-<br><br>JACOB SPECK<br>1341 Fox Run Drive, Apt. No. 105<br>Willoughby, Ohio 44094,<br><br>-and-<br><br>P. S., A MINOR, By and Through<br>Her Parent and Next Friend,<br>LINDSAY SCHILL<br>1341 Fox Run Drive, Apt. No. 105<br>Willoughby, Ohio 44094,<br><br>　　　　　　　Plaintiffs,<br><br>-vs-<br><br>LAKE COUNTY DEPARTMENT OF<br>JOB AND FAMILY SERVICES<br>105 Main Street<br>Painesville, Ohio 44077,<br><br>-and-<br><br>UNIVERSITY HOSPITALS HEALTH<br>SYSTEM, INC.<br>3605 Warrensville Center Road<br>Shaker Heights, Ohio 44122,<br><br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.:<br><br>JUDGE:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT**<br>**WITH JURY DEMAND** |

**NOW COME THE PLAINTIFFS, Lindsay Schill, Jacob Speck, and P. S., A Minor (hereinafter, "Schill", "Speck", and "P. S.", respectively)**, by and through their undersigned counsel, and for their Complaint state, allege, and aver as follows:

## PRELIMINARY STATEMENT

1. On October 10, 2022, Lindsay Schill and Jacob Speck eagerly arrived at University Hospitals' TriPoint Medical Center feeling elated in anticipation for the birth of their first baby girl and the beginning of their lives together, as a family. A few days later, Lindsay, Jacob, and their newborn baby girl departed the hospital feeling traumatized, embarrassed, and full of distrust for the medical community and family who falsely accused them of neo-natal drug abuse, Lindsay, Jacob, and their newborn baby girl, P. S., now find themselves considering relocation due to the ongoing indignity brought to their individual and collective reputations.

2. Plaintiff Schill had never imagined that the simple act of eating a poppy-seed bagel prior to her hospital admission would lead to such substantial emotional trauma and humiliation, in addition to irreversible reputational damage, but that was in fact the direct result and permanent impact of Defendants' negligent conduct.

3. Specifically, Defendant University Hospitals Health System, Inc. ("UH") adopted and maintained a faulty drug screening protocol, which is inconsistent with Federally accepted screening guidelines and prone to yield "false-positive" results.

4. Further, Defendant Lake County Department of Job and Family Services ("LCDJFS") compounded UH's negligence, when instead of immediately and reflexively conducting its own investigation and drug screening of Plaintiff Schill, it simply adopted the inaccurate drug test result in such a way so as to harm Plaintiffs severely and permanently.

5. The problem this presents is twofold: (i) LCDJFS violates the fundamental Constitutional rights of parents when it pre-empts the parenting decisions of those parents, in the absence of any reasonable suspicion of abuse or imminent danger of abuse, and (ii.) UH aids and abets that Constitutional violation by carrying out an outdated and scientifically unsound drug-testing regime, which fails to provide necessary and appropriate medical care to its patients.

6. Plaintiffs have thus brought this civil rights action to stop Defendants LCDJFS and UH from continuing their unlawful and unconstitutional practices, which violate the fundamental rights of parents and their minor children and, in this case, acted in concert with one another to cause serious, irreparable harm to Plaintiffs.

**PARTIES TO THIS ACTION**

7. Lindsay Schill is an individual, residing in the City of Willoughby, County of Lake, State of Ohio.

8. Jacob Speck is an individual, residing in the City of Willoughby, County of Lake, State of Ohio.

9. P. S., a Minor, by and through her parent and next friend, Lindsay Schill, is an individual, residing in the City of Willoughby, County of Lake, State of Ohio.

10. Defendant LCDJFS is a state government agency, with offices in the City of Painesville, County of Lake, State of Ohio. Defendant LCDJFS was at all times acting by and through its duly registered agents, employees, and/or assigns, who were then and there acting within the course and scope of their employment and in accordance with the customs, policies, and practices of the LCDJFS.

11. Defendant UH is a not-for-profit corporation, with offices in the City of Shaker Heights, County of Cuyahoga, State of Ohio. Defendant UH was, at all times relevant, acting by and through its duly registered agents, employees, and/or assigns, who were then and there acting within the course and scope of their employment and in accordance with the customs, policies, and practices of UH.

## STATEMENT OF JURISDICTION AND VENUE

12. A substantial number of the events giving rise to this cause of action occurred within the boundaries of the Eastern Division of the Northern District of Ohio.

13. Plaintiffs reside, Defendant LCDJFS has offices, and Defendant UH is headquartered within the boundaries of the Eastern Division of the Northern District of Ohio.

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). Declaratory relief is authorized by 28 U.S.C. § 2201 and Rule

57 of the Federal Rules of Civil Procedure.  This Court has supplemental jurisdiction over the Plaintiffs' state and common-law causes of action under 28 U.S.C. § 1367.

## FACTS

### UH'S DRUG-TESTING POLICY

15. Despite there being no national standards establishing drug testing criteria, UH drug tests its neo-natal patients (i.e., pregnant women) regardless, and considers a test to be positive for opiates if the level of such metabolites detected in the collected urine is 300 nanograms/mL or above.

16. Such a low "cut-off" level is more than likely to produce false-positive results; in fact, UH's opiate testing "cut-off" levels are far lower than those set by the Federal government for Federal workplace drug-testing programs, which are set at 2000 nanograms/mL.  (Title 49 Subtitle A Part 40 Subpart F § 40.87).

17. For some time, it has been widely known that certain foods are prone to cause false-positive results based upon the presence of common medicines and benign food-based ingredients (e.g., poppy seeds).

18. Nevertheless, UH maintains a policy of reporting maternity patients who produce positive opiate test results of 300 nanograms/mL or above to LCDJFS, despite the absence of any Federal or state law or regulation.

19. UH's policy of subjecting obstetrical patients to faulty drug tests and then informing LCDJFS was carried out with the knowledge of and in cooperation with LCDJFS.

### THE BIRTH OF P. S.

20. Prior to the birth of P. S., Plaintiff Schill had received necessary and appropriate prenatal medical care, culminating in the scheduling of an induced delivery on October 10, 2022, at TriPoint Medical Center.

21. Plaintiff Schill checked in for delivery on October 10, 2022, and on the morning of October 11, 2022, gave birth to a healthy baby girl, P. S.

22. Prior to her scheduled admission to TriPoint, Plaintiff Schill consumed an "everything" bagel which contained poppy-seeds.



23. No employee at UH asked Plaintiff Schill whether she had eaten any foods that could affect or alter the drug test results, nor did any employee at UH advise Plaintiff Schill that the ingestion of certain foods, such as poppy-seeds, could impact the results of the drug test they would be performing on her urine sample.

24. Due to the extremely low opiate testing "cut-off" level established by UH, the result of Plaintiff Schill's initial drug test was positive for opiates, since the concentration of opiate metabolites in her urine was greater than 300 nanograms/mL.

25. Plaintiff Schill did not use any drugs while pregnant with P. S.

26. The positive result on the initial drug test was due solely to Plaintiff Schill's ingestion of the bagel containing poppy-seeds prior to her hospital admission.

27. UH, by and through TriPoint, informed LCDJFS of Plaintiff Schill's positive drug test result.

28. UH failed to inform LCDJFS that foods, such as poppy-seeds, could be responsible for the positive opiate test result.

29. LCDJFS failed to request or obtain from UH the specific concentration levels of opiate metabolites or morphine detected in Plaintiff Schill's initial drug test.

30. LCDJFS failed to independently investigate whether Plaintiff Schill's test result could have been a "false-positive" due to Plaintiff Schill's ingestion of certain foods or medicines.

31. Upon information and belief, UH and its agents and employees had no extrinsic facts supporting a determination that P. S. had been the victim of child abuse.

32. Nonetheless, P. S. was also drug-tested, and the results of that drug test were negative.

## THE LCDJFS "SAFETY PLAN"

33. Upon being notified by UH of Plaintiff Schill's positive drug test result, LCDJFS immediately regarded her as drug-addicted.

34. On October 14, 2022, an LCDJFS caseworker, Ms. Halley, notified Plaintiffs that they would not be able to remove P. S. from the hospital unless and until they agreed to adopt and sign a "Safety Plan", imposed by their agency.

35. The Safety Plan contained requirements which violated the fundamental parental and Civil rights of Schill and Speck, including, but not limited to, the right to natural breastfeeding and the right to timely return to the privacy of their home following the birth of P. S.

36. In order to avoid violating the Safety Plan, Plaintiffs were forced to relocate into the home of and under the supervision of a relative, Linda Speck.

37. These actions and omissions of Defendants interrupted critical postpartum bonding between Plaintiffs and P. S. and were the direct and proximate cause of Plaintiffs' emotional and psychological pain and suffering, as well as injury to their individual and collective reputations.

## STATEMENT OF CLAIM

### COUNT I
### FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS

38. The Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth at length herein.

39. LCDJFS's custom, policy, or practice of preempting the rights of new parents, based solely upon a faulty drug screening protocol, in the absence of any objectively reasonable suspicion of abuse, and without any additional investigation of its own (i.e., the "LCDJFS Policy"), violates the Fourteenth Amendment right of parents to substantive due process because it infringes on the fundamental liberty interest of parents to the custody, care, and control of their children.

40. The Plaintiffs have suffered substantial harm as a result of the LCDJFS Policy, including, but not limited to, emotional and psychological pain and suffering and injury to their reputations.

## COUNT II
## CONSPIRACY TO VIOLATE
## PLAINTIFFS' FOURTEENTH AMENDMENT RIGHTS

41. The Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though fully set forth herein.

42. Upon information and belief, Defendants LCDJFS and UH entered into an agreement or understanding to violate the Plaintiffs' Constitutional rights under the Fourteenth Amendment by carrying out a policy of drug-testing obstetric patients, which resulted in the actions taken against the Plaintiffs by LCDJFS without reasonable suspicion that P. S. had been abused or was in imminent danger of abuse.

43. In furtherance of this agreement or understanding, UH's policy is to require that TriPoint Medical Center notify LCDJFS when a maternity patient's *initial* drug test is positive.

44. Defendants UH and LCDJFS each acted in furtherance of said agreement or understanding by carrying out a drug test of Plaintiff Schill and then having LCDJFS, on the basis of that test, force the Plaintiffs to adopt a Safety Plain in violation of 42 U.S.C. § 1983.

45. Defendants LCDJFS and UH acted intentionally or with wanton and reckless disregard to deprive the Plaintiffs of their Constitutional rights under the Fourteenth Amendment.

46. The Defendants' actions constituted an extreme departure from the ordinary standard of care and demonstrated a conscious indifference to Plaintiffs' Constitutional rights under the Fourteenth Amendment.

47. The Plaintiffs have suffered substantial harm as a result of the Defendants' conduct, including, but not limited to, emotional and psychological pain and suffering and injury to their reputations.

COUNT III
NEGLIGENCE

48. The Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth at length herein.

49. In admitting and treating Plaintiff Schill as a patient and performing a drug screening UH owed Plaintiff Schill a duty to use reasonable care to process and test Plaintiff Schill's urine sample in a scientifically reasonable manner to avoid incorrect and/or false-positive results.

50. UH breached its duty of care and was negligent in the following respects:

   a. In setting "cut-off" levels for opiates at an arbitrary and unreliably low level such that incorrect and/or false-positive results are likely to occur;

   b. In failing to conduct scientific or medical studies and/or to utilize accepted standards of laboratory practice to determine an appropriate "cut-off" level;

   c. In improperly setting an unreasonable "cut-off" level;

   d. In failing to utilize "cut-off" levels, screening procedures, and/or testing procedures which would account for or reveal the likely effect of consuming food such as poppy-seeds prior to testing;

   e. In failing to use all due care in the implementation and setting of "cut-off" levels utilized at UH as a matter of policy;

  f.  In interpreting and reporting Plaintiff Schill's urine testing based on "cut-off" levels that were scientifically unsound and unreliable markers for detecting the prohibited activity of opiates;

  g.  In failing to exclude other causes for positive test results;

  h.  In failing to use all due care in the interpretation and reporting of Plaintiff Schill's urine screening;

  i.  In interpreting and reporting the results of Plaintiff Schill's urine screening at the arbitrarily set "cut-off" levels as sole proof that Plaintiff Schill abused opiates;

  j.  In failing to warn Plaintiff Schill that her test results could be affected by the consumption of foods such as poppy-seeds;

  k.  In failing to inquire whether Plaintiff Schill had consumed a food product which could have impacted the accuracy of testing; and

  l.  In failing to inform Plaintiff Schill of her test results and/or that her test results were or could be the result of her consumption of poppy-seeds.

51. As a direct and proximate result of the above negligence of UH, Plaintiff Schill suffered personal injury, including, but not limited to, emotional and psychological pain and suffering and injury to her reputation.

<u>COUNT IV</u>
<u>FALSE LIGHT INVASION OF PRIVACY</u>

52. The Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth at length herein.

53. UH publicized the results of Plaintiff Schill's drug test to LCDJFS as positive for opiates when in fact it was a false-positive result.

54. By incorrectly reporting to LCDJFS the results of Plaintiff Schill's drug test as a positive result for opiates, UH placed Plaintiff Schill in a false light.

55. The false light in which UH placed Plaintiff Schill would be highly offensive to a reasonable person.

56. UH had knowledge of or acted in reckless disregard as to the false characterization of the positive drug test result and false light in which it was placing Plaintiff Schill.

57. Plaintiffs suffered harm as a direct result of the actions of UH, including, but not limited to, emotional and psychological pain and suffering, as well as injury to their family's reputation and a loss of consortium.

## PRAYER FOR RELIEF

**WHEREFORE**, in light of the foregoing, the Plaintiffs, Lindsay Schill, Jacob Speck, and P. S., pray for judgment against the Defendants, Lake County Department of Job and Family Services and University Hospitals Health System, Inc., as follows:

(a) A judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1983 declaring the LCDJFS policy which implements an involuntary Safety Plan based solely upon a single positive drug test, without any individualized suspicion of abuse or likelihood of abuse, to be a violation of individuals' Fourteenth Amendment right to Due Process;

(b) Compensatory and punitive damages in an amount to be proven at Trial;

(c) An Order awarding the Plaintiffs the costs incurred in this litigation, including attorneys' fees pursuant to 42 U.S.C. § 1988; and

(d) Such other relief as this Honorable Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs demand a jury on all issues which are so triable.

Respectfully Submitted:

**LAW OFFICES OF ROBERT E. ADELMAN**

  *s/ Robert E. Adelman*
ROBERT E. ADELMAN (OSC No. 0070262)
49 West Orange Street, Suite No. 1
Chagrin Falls, Ohio  44022
Telephone:  (440) 589-6900
Facsimile:  (440) 589-6902
E-Mail:  office@robertadelmanlaw.com
*Attorney for the Plaintiffs, Lindsay Schill, Jacob Speck, and P. S., A Minor, By and Through Her Parent and Next Friend, Lindsay Schill*

**CHARLES V. LONGO CO., L.P.A.**

  *s/ Charles V. Longo*
CHARLES V. LONGO (OSC No. 0029490)
25550 Chagrin Boulevard, Suite No. 320
Beachwood, Ohio  44122
Telephone:  (216) 514-1919
Facsimile:  (216) 514-3663
E-Mail:  cvlongo@cvlongolaw.com
*Attorney for the Plaintiffs, Lindsay Schill, Jacob Speck, and P. S., A Minor, By and Through Her Parent and Next Friend, Lindsay Schill*