UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDSAY SCHILL, et al., | ) | CASE NO.  1:23-cv-00836 |
| | ) | |
| Plaintiffs, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| LAKE COUNTY DEPARTMENT OF JOB | ) | MEMORANDUM AND ORDER |
| AND FAMILY SERVICES, et al., | ) | |
| | ) | |
| Defendants. | | |

## I.      INTRODUCTION

Plaintiffs Lindsay Schill and Jacob Speck were required to accept government supervision in caring for their newborn child, P.S., after a drug test of Plaintiff Schill by Defendant University Hospitals' TriPoint Medical Center (UH) produced a false positive and the result was reported to Defendant Lake County Department of Jobs and Family Services (Lake County).  Plaintiffs bring the present action against UH and Lake County alleging federal due process and conspiracy claims, as well Ohio law claims of negligence and negligent infliction of emotional distress. R. 11 (Amended Complaint).

Now before the Court is UH's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) moving the Court to dismiss all claims against it—Counts II, III and IV of the Amended Complaint. R. 12.[1] Plaintiff initially responded in opposition to the motion (R. 14), to which Defendant UH has replied. R. 15. Thereafter, Plaintiffs moved to voluntarily dismiss this

---

[1] Count I is solely against Defendant Lake County, which is not part of this motion to dismiss.

action without prejudice (R. 16), an action that UH opposes. (R. 17).

## II.     BACKGROUND

In addition to the essential facts summarized above, Plaintiffs' Amended Complaint sets forth the following pertinent facts. As required by Fed. R. Civ. P. 12(b)(6), Plaintiff's well-pleaded allegations are accepted as true.

Prior to the birth of her daughter, Plaintiff Schill received pre-natal care at Defendant UH and was scheduled for an induced delivery on October 10, 2022. R. 11, PageID#: 72.  Upon delivering her daughter on that date, Plaintiff Schill was tested for opiates. *Id*. Plaintiffs contend that although there is no national standard establishing a baseline number of detectable opiates, the screening test used by UH utilized a "far lower" cut-off level than it should have, since the lower number produces more false positives. *Id*., PageID#: 71. To that point, they also contend that "it is widely known" that foods like poppyseed—which Plaintiff Schill allegedly consumed before her drug test—can cause false positives. *Id*., PageID#: 71,72. Plaintiffs allege that no one at UH asked Schill if she had recently consumed any foods that might affect the drug test results nor warned her that recent consumption of poppyseeds could produce a false positive. *Id*.

Plaintiff's drug test was positive. *Id*., PageID#: 73. UH then reported that finding to Lake County. *Id*. A separate drug test of the infant P.S. after her birth was negative. *Id*.

Upon receiving the information about Plaintiff Schill's test, Lake County notified Plaintiffs Schill and Speck that they would not be able to leave the hospital with their daughter until they signed a "safety plan" prepared by Lake County. *Id.*, PageID#: 74. That plan*, inter alia*: (1) restricted or prohibited Plaintiff Schill from breastfeeding P.S.; (2) mandated that all time with P.S. would have to be "supervised"; and (3) stated that Plaintiffs' home would be subject to unannounced visits by Lake County. *Id.* While the Amended Complaint is not fully clear on how

2

the issue of signing the safety plan was resolved, it states that "[i]n order to avoid violating the Safety Plan, Plaintiffs were forced to relocate into the home of and under the supervision of a relative, Linda Speck." *Id*.

Plaintiffs Schill and Speck argue that the acts and/or omissions of the Defendants interrupted and precluded postpartum bonding with P.S. and subjected them to emotional and psychological pain and suffering, as well as damaged their reputations. *Id*.

A. Plaintiffs' Amended Complaint

UH moved to dismiss Plaintiffs' initial complaint (R. 1, R. 9), to which Plaintiffs responded with the present Amended Complaint. (R. 11). Plaintiffs allege four claims in the Amended Complaint:

Count One  alleges Lake County's "custom, practice and policy" of preempting the rights of new parents solely on the basis of a "faulty drug screening protocol" without any other reasonable suspicion of abuse or additional investigation violates Fourteenth Amendment substantive due process by denying a parent's fundamental liberty interest in the custody, care and control of children. *Id*., Page ID# 74-75.

Count Two alleges Lake County and UH conspired to violate Plaintiffs' Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983, with the conspiracy constituting UH drug-testing Plaintiff Schill without a reasonable suspicion that P.S. was abused or in imminent danger of abuse and Lake County, on the basis of such test, forcing Plaintiffs to adopt the safety plan. *Id*., PageID#: 75-76.

Count Three alleges UH was medically negligent in its care of Plaintiff Schill by utilizing an unreasonable and unreliable low cut-off number for opiates in the drug test; failing to implement procedures to account for the effect of food consumption that could alter the test

3

results; failing to warn Plaintiff Schill about the possibility of false positive results. *Id.*, PageID#: 76-77.

Count Four alleges both UH and Lake County breached duties to Plaintiffs Schill and Speck thereby harming their ability to care for P.S., which resulted in emotional and psychological pain and suffering, as well as loss of consortium. *Id.*, PageID#: 78.

B. <u>UH Motion to Dismiss</u>

UH's motion to dismiss moves to dismiss Counts Two, Three, and Four—the only claims against it. R. 12, PageID#: 84. It argues first that the section 1983 claim in Count Two, the sole federal claim against it, should be dismissed because it fails allege sufficient facts to support a claim of conspiracy between UH and Lake County. *Id.*, PageID#: 90. It points out initially that UH, as a private hospital, cannot be a state actor under 42 U.S.C. § 1983. *Id.*, PageID#: 91. It further argues that Count Two does not meet the pleading standards for alleging a § 1983 conspiracy because it fails to allege the existence of a "single plan" between UH and Lake County. *Id*., PageID#: 91-92. It further argues that Ohio law mandated that UH notify Lake County of Plaintiff Schill's positive drug test and this legally mandated notification requirement cannot be in furtherance of a conspiracy. *Id.*, PageID#: 92. Finally, it asserts that the Amended Complaint contains no allegations showing a "malicious mindset or motive" by UH such as would cause it to participate in a conspiracy with Lake County to injure the Plaintiffs. *Id.*, PageID#: 93.

As to Counts Three and Four, UH maintains that these are state law claims of medical negligence (Count Three) and negligent infliction of emotional distress (Count Four) that should be dismissed on multiple grounds or alternatively, the Court should decline to exercise its supplemental jurisdiction. *Id.*, PageID#: 93-96.

Plaintiffs have filed a brief in response, R. 14, to which Defendants have replied. R. 15.

4

III.    ANALYSIS

A.  Standard of Review

The relevant standard for adjudicating motions to dismiss under Rule 12(b)(6) was articulated by the United States Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Simply stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 566 U.S. at 678 (internal quotation and citation omitted). Although factual allegations in the complaint are to be accepted as true and construed in favor of the plaintiff, the reviewing court need not accept as true any "legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. In the end, if the allegations of the complaint do no more than infer the mere possibility of misconduct, then the complaint must be dismissed. *Id.*, at 570.

B.  Application of Standards

As noted, Count Two alleges that UH conspired with Lake County to violate the Plaintiffs' Fourteenth Amendment right to the care and custody of P.S. by UH administering a drug test to Plaintiff Schill without cause to do so and Lake County unreasonably relying on that single test to impose the safety plan. Supporting that claim involves establishing two separate legal elements: (1) that a conspiracy existed between UH and Lake County and (2) that UH was a state actor for purposes of Section 1983. The relevant requirements for each element are separately addressed.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by an unlawful act." *Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015), quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). A plaintiff must show that: (1) a "single plan" existed; (2) defendants "shared in the general conspiratorial objective" to deprive plaintiff of his constitutional rights; and (3) that "an overt act was committed in furtherance of the

5

conspiracy that caused [the plaintiff's] injury." *Id*., quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). "Express agreement among all the defendants is not necessary to find the existence of a civil conspiracy [and] [e]ach conspirator need not have known all the details of the illegal plan or all of the participants involved." *Bazzi v. City of Dearborn*, 658 F.3d. 598, 602 (6th Cir. 2011). Nevertheless, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague or conclusory allegations unsupported by material facts will not be sufficient to state such a claim under §1983." *Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir. 1987). "A Plaintiff must allege sufficient factual allegations to link the alleged conspirators in the conspiracy and to establish the requisite 'meeting of the minds' essential to the existence of the conspiracy." *Meyers v. Mitrovic*, 2015 WL 413804, at *11 (N.D. Ohio Jan. 30, 2015), quoting *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1983).

"Liability under § 1983 is predicated on acts occurring under color of state law." *Leta v. Hamilton County Department of Jobs & Family Services*, 668 F.Supp.3d 724, 738 (S.D. Ohio Apr. 5, 2023). Thus, a private entity cannot ordinarily be liable under § 1983 unless its actions may be fairly attributable to the state under the public function test, the state compulsion test, or the nexus test. *Id.* The public function test "requires that the private entity exercise powers that are traditionally exclusively reserved to the state. *Id*. (citation omitted). The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action that is really that of the state. *Id*. As the district court in *Leta* stated, all these tests boil down to the core question of "whether there is such a close nexus between the State and the challenged action that seemingly private behavior may fairly be treated as that of the State itself." *Id*., quoting *Brent v. Wayne Cnty Dep't of Hum Servs.,* 901 F.3d 656, 676 (6th Cir. 2018).

6

Application of these three tests to the conduct of a private entity is only relevant, however, in cases where there is no allegation of cooperative or concerted action between state and private actors. *Memphis Tenn. Area Local American Postal Workers Union AFL-CIO v. City of Memphis,* 361 F.3d 898, 905 (6th Cir. 2004). "If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983 …." *Id*., quoting *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000).

Here, Plaintiffs allege that UH and Lake County "entered into an agreement or understanding" whereby UH would subject obstetric patients to "faulty drug tests" and then notify Lake County when an   initial drug test was positive, whereupon Lake County would impose a safety plan, all to deprive Plaintiffs of their Fourteenth Amendment rights. R. 7, PageID#: 71, 75, 76. Initially, it must be noted that, as stated above, the Amended Complaint contains no factual allegations that would, if proven, establish when or how a meeting of the minds occurred between UH and Lake County as to any aspect of such an alleged conspiracy. Accordingly, the pleading itself is fatally deficient in alleging a conspiracy between UH and Lake County in Count II.

More important, however, the Amended Complaint fails to acknowledge the existence and consequences of Ohio's child abuse reporting statute, Ohio Revised Code 2151.421. UH's motion to dismiss accurately asserts that this statute required UH to report Plaintiff Schill's positive drug test to Lake County. R. 12, PageID#: 92. Indeed, as the court observed in *Blythe v. Schlievert*, 245 F.Supp.3d 959, 967 (N.D. Ohio 2017), it is not disputed that § 2151.421 imposes a legal duty on medical professionals to "immediately report" to the "public children services agency" any case where the medical professional has "reasonable cause to suspect" that a minor child is at risk of abuse, "whether [such] conclusions were accurate or not." Further in that regard, Ohio law holds that a mother's prenatal drug use "reasonably indicate[s] child abuse or a present

7

danger to [the child]." *In re H.P.*, 2022 WL 792269, at *3 (Ohio App. 9th Dist. Mar. 16, 2022) (citation omitted); *see also*, *Baby Boy Blackshear*, 90 Ohio St. 3d 197, 199-200 (2000) (mother's prenatal drug use can lead to an adjudication of the newborn child as abused). Thus, UH had a clear legal duty under Ohio law to report Plaintiff Schill's positive drug test to Lake County as a reasonable indication that P.S. was in present danger of abuse.

Moreover, as *Blythe* makes equally clear, any medical entity that "fulfills [its] legal duty" under Section 2151.421 to report suspected child abuse is not a "state actor" for purposes of a Section 1983 suit. "If these four doctors [in *Blythe*] were state actors, then so would be every private healthcare professional who fulfills his or her duty under § 2151.421 to report suspected child abuse." *Blythe*, at 968; *see also, Harrington v. UPMC,* 2022 WL 1606422, at *7 (W.D. Penn. May 20, 2022) (private healthcare providers who report potential child abuse to local children's services agencies in compliance with statutory reporting requirements are not state actors for purposes of § 1983) (collecting cases).

Accordingly, Plaintiffs have neither adequately pled the existence of an actionable civil conspiracy between UH and Defendant Lake County whereby UH would subject obstetric patients to drug tests so that Lake County could then impose a safety plan on the new parents, nor can Plaintiff show that UH was a "state actor" for purposes of § 1983 when, as required by Ohio law, it reported Plaintiff Schill's false positive drug test results to Defendant Lake County.

Therefore, UH's Motion to Dismiss Count Two of the Amended Complaint is GRANTED and that claim is DISMISSED with prejudice. UH's arguments to dismiss the remaining claims are DENIED as MOOT for the following reasons.

C. Plaintiffs' Motion to Voluntarily Dismiss

Finally, Plaintiff has moved for court order to voluntarily dismiss this action without

prejudice, pursuant to Fed. R. Civ. P 41(a)(2), which UH opposes. The Court has considered the parties' positions, and as explained *supra* dismissed with prejudice the sole federal claim against UH because federal law clearly dictates that result. *See supra*; *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 719 (6th Cir. 1994) ("At the point when the law clearly dictates a result for the defendant, it is unfair to subject him to continued exposure to potential liability by dismissing the case without prejudice.").

The Court, however, expresses no view regarding the viability of the Plaintiffs' remaining claims. Rather, pursuant to 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction." "Where an action in federal court includes both federal and pendent state claims and the court dismisses the federal claims before trial on a motion for summary judgment, the pendent state claims are ordinarily dismissed as well." *Williams v. City of River Rouge*, 909 F.2d 151, 157 (6th Cir. 1990); *accord Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims…."); *Lanzer v. City of Louisville*, Ohio, No. 5:13CV2251, 2014 WL 4441481, at *7 (N.D. Ohio Sept. 9, 2014) (same).

Rather than remand, the Court hereby GRANTS Plaintiffs' motion to dismiss their remaining claims without prejudice.

## IV.  CONCLUSION

Defendant UH's motion to dismiss (R. 12) is GRANTED in part and Count Two alleging a claim under 42 U.S.C. §1983 is DISMISSED with PREJUDICE. Plaintiffs' Motion to Dismiss without prejudice (R. 16) is GRANTED in part with respect to the remaining claims. The remainder of UH's motion to dismiss is DENIED as MOOT. The prior motion to dismiss (R. 9)

is DENIED as MOOT, and Plaintiffs' motion for leave to reply (R. 10) is also DENIED as MOOT.

      IT IS SO ORDERED.

Dated: March 29, 2024               /s/ *David A. Ruiz*
                                      David A. Ruiz
                                      United States District Judge